COMMONWEALTH *vs.* SPRINGFIELD TERMINAL RAILWAY
COMPANY (and seven companion cases[1]).

No. 09-P-824.

Suffolk. December 14, 2009. - July 8, 2010.

Present: COHEN, SMITH, & GRAINGER, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act. Practice, Criminal,* Execution of sentence, Appeal, Stay of proceedings. *Appeals Court,* Appeal from order of single justice. *Rules of Criminal Procedure.*

Four corporate criminal defendants seeking to stay, on appeal, the execution of their sentences on charges of violating the reporting procedure mandated by the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E, § 7, failed to demonstrate that a single justice of this court abused her discretion in denying the motion based on the security risk posed by the defendants, where the single justice properly deferred, in the absence of evidence to the contrary, to the trial judge's finding regarding the defendants' danger to the community based on their apparent failure to heed environmental reporting laws; and where, given the defendants' status as corporations and the resulting inapplicability of imprisonment, there was no concern that their appeal would become essentially futile or useless upon prompt execution of their sentences. [229-230]

A single justice of this court properly denied a motion brought by four corporate criminal defendants who were seeking to stay, on appeal, a trial court judge's order requiring them to pay into an escrow account an amount of money equivalent to the amount of the fines imposed by their sentences on charges of failing to heed certain environmental laws, where such a measure preserved the objective of Mass.R.Crim.P. 31(b) (i.e., to stay the payment of fines pending appeal) while at the same time addressing the concern that some of the defendants may no longer exist at the end of the appeal period. [231]

INDICTMENTS found and returned in the Superior Court Department on April 1, 2008.

Following trial and conviction of the defendants, a joint motion for stay of execution of sentences was heard in the Appeals Court by *Cypher*, J.

*Dennis J. Kelly* (*Paul R. Mastrocola* with him) for the defendants.

[1]One against Springfield Terminal Railway Company, two against Maine Central Railroad Company, two against Boston and Maine Corporation, and two against Pan Am Railways Incorporated.

*James J. Arguin*, Assistant Attorney General, for the Commonwealth.

SMITH, J. The defendants are four corporations that operate railways in Massachusetts and other States. Each defendant was charged with two counts of violating the reporting procedure mandated by the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E, § 7,[2] and prosecuted in accordance with G. L. c. 21E, § 11.[3] The charges arose out of the defendants' failure to notify the Department of Environmental Protection (DEP) about a diesel fuel leak from a parked locomotive. A Superior Court jury returned guilty verdicts on both counts against all of the defendants. The judge sentenced each defendant on the first count to pay a fine of $100,000, plus a $25,000 surfine, payable within thirty days, and on the second count each defendant was placed on probation for three years with special conditions.[4]

---

[2]General Laws c. 21E, § 7, provides in relevant part: "Any owner or operator of a site, . . . as soon as he has knowledge of a release or threat of a release of oil or hazardous material, shall immediately notify the Department of Environmental Protection thereof."

[3]General Laws c. 21E, § 11, states in relevant part: "Any violation of this chapter . . . shall be presumed to constitute irreparable harm to the public health, safety, welfare or the environment. Such presumption may be rebutted by a preponderance of evidence.

"In addition to liability for costs incurred . . . a person violating any provision of section seven shall be punished by a fine of not more than one hundred thousand dollars, or by imprisonment in the [S]tate prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years, or both, for each such violation. Each day such violation occurs or continues shall be considered a separate violation."

[4]Among the special conditions of probation were as follows:

"7. The defendants are restrained and enjoined from hypothecating, encumbering, concealing, transferring, or otherwise disposing of their assets, except in the ordinary course of business as defined by the IRS, until they have paid their fines into the interest-bearing account set up for that purpose with dual names (Attorney General and corporate defendant);

"8. The defendants are restrained and enjoined from making bonus payments, retention payments, or any other payments to anyone over $100,000 cumulatively in a twelve-month period, except for salaries until they have paid their fines into the interest-bearing account set up for that purpose with dual names (Attorney General and corporate defendant)."

On March 31, 2009, the defendants timely appealed their convictions[5] and filed a motion for a stay of execution of their sentences. On April 2, 2009, the judge, in a memorandum of decision, denied the motion and ordered each defendant to pay an amount equivalent to the fine into an interest-bearing account in the joint names of the corporate defendant and the Attorney General during the pendency of the appeal. The defendants thereafter filed a joint motion to stay the execution of their sentence with a single justice of the Appeals Court on April 8, 2009. The motion was filed pursuant to Mass.R.Crim.P. 31(a), 378 Mass. 902 (1979), and Mass.R.A.P. 6, as appearing in 378 Mass. 930 (1979).[6] On the same date, the single justice issued an order denying the joint motion "for substantially the reasons stated in the [trial] judge's memorandum of decision and order on the defendants' joint motion to stay execution of sentence entered on April 2, 2009." On April 15, 2009, the defendants filed in the Appeals Court a joint notice of appeal from the April 8 single justice order.[7] On or about April 30, 2009, the defendants together deposited $500,000 into a joint interest-bearing escrow account in the names of each corporate defendant and the Attorney General.

When deciding whether to stay the execution of a sentence pending an appeal, see Mass.R.Crim.P. 31, 378 Mass. 902 (1979), a judge should consider two distinct factors. First, the sentence may be stayed if defendant raises "an issue which is worthy of presentation to an appellate court, one which offers some reasonable possibility of a successful decision in the appeal." *Commonwealth* v. *Senior*, 429 Mass. 1021, 1022 (1999), quoting from *Commonwealth* v. *Allen*, 378 Mass. 489, 498 (1979). See also *Commonwealth* v. *Cohen (No. 2)*, 456 Mass. 128, 132 (2010); *Commonwealth* v. *Hodge (No. 1)*, 380 Mass. 851, 855 (1980).

---

[5]The defendants' direct appeal is currently pending in the Appeals Court.

[6]Effective October 1, 2009, amendments to the above rules changed the procedure available to the parties after a trial judge acts on a motion for a stay. See Mass.R.Crim.P. 31, as amended, 454 Mass. 1501 (2009); Mass. R.A.P. 6, as amended, 454 Mass. 1601 (2009). We apply the earlier versions of the rules as they were in effect when the relevant events occurred. *Commonwealth* v. *Cohen (No. 2)*, 456 Mass. 128, 129 n.3 (2010).

[7]Following their appeal from the order of the single justice, the defendants filed additional motions to stay before a single justice of the Appeals Court and a single justice of the Supreme Judicial Court. Those motions were also denied. The order issued on April 8, 2009, is the order on appeal in these proceedings.

Second, "[the] judge must find that the defendant presents no risk of flight or danger to the community, and that he is unlikely to commit additional criminal acts during the pendency of his appeal." *Commonwealth* v. *Senior, supra.*

In the defendants' joint motion for a stay of execution of their sentences, they argue that, pursuant to Rule 31(b), they are entitled to a mandatory stay of the fines imposed on them.[8] They also claim that they are entitled to a stay of the probation conditions pending appeal because they do not pose a security risk, and because the issues raised in their direct appeal are novel and, therefore, would have a reasonable possibility of success at the appellate level.

In denying the defendants' motion, the trial judge focused heavily on the security risk posed by the defendants. In particular, she noted that each of the corporate defendants had failed immediately to notify DEP about the fuel release, of which numerous corporate employees, including management personnel, had knowledge. Further, "[t]he jury heard evidence that the corporate defendants, after [having] learned that DEP had been notified of the spill by an anonymous call, on at least two occasions directed employees to move the leaking locomotive to the Willows, an area in the vicinity of drinking wells for the public in Ayer." The diesel fuel spill was eventually estimated to be in the "100's of gallons." Although evidence indicated that an environmental plan of some kind was in place in the office of the train operations manager, the manager "had not read it and did not know, even by the trial[,] whether there was a notification procedure or what it was." Given the magnitude of the spill, the lack of procedures in place, and the defendants' actions, the judge concluded that the defendants posed a "tremendous danger" to the community and to the public.

Moving to the second factor, the judge acknowledged that the defendants presented multiple novel issues of law. Nevertheless, she summarily concluded that they had "failed to establish even a reasonable possibility of success" at the appellate level. Also,

---

[8]Mass.R.Crim.P. 31(b) states in relevant part:

> "If [an] . . . entry of an appeal is made following a sentence to pay a fine or fine and costs, the sentence shall be stayed by the judge imposing it or a judge of the Supreme Judicial Court or the Appeals Court if there is a diligent perfection of appeal."

because time spent in prison was not a factor in this case, the judge found that the defendants were not harmed by the denial of a stay of probation.

Lastly, the judge determined that the fine "shall be stayed" by ordering that the amount of the fine be placed in a jointly held, interest-bearing account during the pendency of the appeal, rather than order that the fine be paid directly to the Commonwealth. "That way the effect of the stay is granted, i.e., payment not made, but the Commonwealth is, if successful on the defendants' appeal, assured of payment of the fine from the escrowed funds. Given the corporate structure of these four defendants, there is no other way to prevent corporate dissolution or dissipation during the duration of the appeal."[9]

*Discussion.* "It is well settled that this court will not reverse an order of a single justice in the absence of an abuse of discretion or clear error of law." *Commonwealth* v. *Senior, supra* at 1021, quoting from *Greco* v. *Suffolk Div. of the Probate & Family Court Dept.*, 418 Mass. 153, 156 (1994). On appeal, the defendants renew the arguments they made before the trial judge and the single justice.

The trial judge's conclusion regarding the defendants' danger to the community was based on the evidence presented at trial about the defendants' apparent failure to heed environmental reporting laws. That evidence is not before us, and the defendants have provided nothing, other than their own assertions, demonstrating that the judge's recitation of the evidence is erroneous. We must therefore defer to her finding that the defendants pose a security risk, as did the single justice. See *Commonwealth* v. *Ferrara*, 8 Mass. App. Ct. 948 (1979) (affirming single justice's denial of defendant's motion for stay on the basis of security risk alone), citing *Commonwealth* v. *Levin*, 7 Mass. App. Ct. 501, 505-506 (1979) ("when a denial by a single

---

[9]There is no question that the corporate structure of the four defendants is complex, and that they are intertwined with each other. On that point, we asked defense counsel at oral argument why there were four cases against four defendants when the undisputed evidence demonstrated only one locomotive leaked diesel oil. The panel was informed that one defendant owned the property, one defendant leased and operated the business on the property, and one defendant owned the locomotive. The defendants were affiliated companies and were, in some form or another, subsidiaries of Pan Am Railways. Yet, they all were separate companies.

justice of a stay of execution pending appeal is predicated, in whole or in part, on reasons of security, the denial should not be disturbed on appeal unless the defendant can demonstrate abuse of discretion").[10] Because the defendants have failed to demonstrate that the single justice abused her discretion in denying the motion for security reasons, we need not decide whether the appellate issues they raise offer some reasonable possibility of a successful decision on appeal.[11]

The rationale underlying the granting of a motion for stay further supports the denial of the defendants' motion. As noted by the trial judge, "[t]he practice [of granting a stay] is grounded in rudimentary notions of justice, for the right of appeal, which our law accords all persons convicted of crime, would otherwise be made nugatory in the case of a short sentence, and would be impaired in the case of a larger sentence: The conviction may be reversible, but the time spent in prison is not." *Commonwealth v. Levin, supra* at 512-513. Because the defendants here are corporations, and imprisonment is inapplicable, there is no concern that their appeal would become essentially futile or useless upon prompt execution of their sentences.

---

[10]While the sentencing of corporate entities to serve probation appears to have no precedent under the laws of the Commonwealth, the defendants concede in their brief that corporations may indeed pose security risks to the public.

[11]We have studied the list of potential appellate issues submitted by the defendants which they argue requires a stay. Most of those issues are set out in brief form and do not require discussion. One of the issues challenges the judge's use of a "collective knowledge" instruction that the defendants claim should not have been given to the jury.

Counsel for both parties after oral argument, in letters pursuant to Mass. R.A.P. 16(1), as amended, 386 Mass. 1247 (1982), called the court's attention to *Commonwealth v. Life Care Centers of America, Inc.*, 456 Mass. 826 (2010), in which the court rejected the application of the collective knowledge doctrine to the crime of involuntary manslaughter where no single employee acted with the required reckless or wanton disregard of the probable harm to the victim. The court distinguished its decision from the holding by the First Circuit in *United States v. Bank of New England, N.A.*, 821 F.2d 844, 855-856 (1st Cir.), cert. denied, 484 U.S. 943 (1987), a decision cited by both parties in their briefs. *Life Care Centers of America, Inc., supra* at 835-836. In the First Circuit decision, the court applied the collective knowledge doctrine to a regulatory offense in which the only mens rea required was knowledge. *Id.* at 836. Here, the statute in question is also a regulatory offense requiring only proof of the defendants' knowledge. Thus, the collective knowledge instruction in this matter does not "offer some reasonable possibility of a successful decision in the appeal." *Commonwealth v. Senior, supra* at 1022.

We next turn to the defendants' argument concerning the order for payment of an amount of money into an escrow account equivalent to the amount of the fines. They claim that an amount paid into an escrow account is not different from the actual payment of the fines, and must be stayed pursuant to rule 31(b).

The Reporters' Notes to Rule 31(b) help to explain why the rule states that the payment of fines must be stayed. The Reporters' Notes state: "This provision is adopted in recognition of the difficulty a defendant has, upon the successful appeal of his judgment, in recovering money he has paid in satisfaction of a fine." Reporters' Notes to Rule 31(b), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1666 (LexisNexis 2008). Here, where the funds were ordered to be placed in a court-controlled escrow account, there is no danger that the funds will be unrecoverable by the defendants should they succeed on appeal. Rather, upon conclusion of the defendants' appeal, the court will order the escrow agent to release the funds to either the Commonwealth or the defendants, depending on the outcome. Thus, the order crafted by the trial judge preserves the objective of the rule pending appeal, while at the same time addressing the concern, apparently raised during the course of the trial proceedings, that some of the defendant corporate entities may no longer exist at the end of the appeal period.[12]

The order of the single justice is affirmed.

*So ordered.*

---

[12]We also note that the Massachusetts Rules of Criminal Procedure "were not intended to be administered inflexibly without regard for the circumstances of the particular case." See Reporters' Notes to Rule 2, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1321 (LexisNexis 2008) (Purpose; Construction; Definition of Terms).